# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Robert E. Blackburn, Judge

Civil Case No. 11-cv-1840-REB-MJW

TAYNA YOUNG, on her own behalf and on behalf of others similarly situated,

    Plaintiffs,

v.

DOLLAR TREE STORES, INC.,

    Defendant.

## ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**Blackburn, J.**

This matter is before me on the **Plaintiff's Motion for Class Certification and Incorporated Memorandum of Law** [#43][1] filed October 19, 2011. The defendant filed a response [#95], and the plaintiff filed a reply [#118]. I deny the motion.

## I. JURISDICTION

I have jurisdiction over this case under 28 U.S.C. § 1331 (federal question), 29 U.S.C. § 216(b) (Fair Labor Standards Act), and 28 U.S.C. § 1367 (supplemental jurisdiction).

## II. BACKGROUND

This case concerns claims under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 - 219. In addition, the plaintiff Tanya Young alleges state law claims for unjust enrichment and recovery of minimum wages and overtime wages under Colorado law.

---

[1] "[#43]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

Young was employed by defendant Dollar Tree Stores, Inc. as an Assistant Store Manager (ASM) at a Dollar Tree store in Colorado. ASMs are paid by the hour. Dollar Tree requires every ASM scheduled to work a shift of six hours or more to record an unpaid meal break of 30 minutes for each such shift. ASMs scheduled to work a shift of 10 hours or more must record two 30 minute unpaid meal breaks.

According to Young, while working for Dollar Tree as an ASM in one of Dollar Tree's Colorado stores, she frequently was required to work during her 30 minute meal breaks but was not paid for this work. Even though she was required to work during meal breaks, she still was required to record an unpaid meal break. She alleges that she was not compensated for time she spent working during unpaid meal breaks. Young cites a variety of Dollar Tree policies which, in combination, allegedly create circumstances which lead to unpaid work during ASM meal breaks.

Young alleges also that ASMs working at Dollar Tree stores are required to perform nightly bank deposits on behalf of the store. Typically, Young alleges, ASMs are required to clock out for the night before making such deposits. As a result, Young contends, ASMs are not paid for the time necessary to make nightly bank deposits.

Young seeks certification of a class of plaintiffs under FED. R. CIV. P. 23 for the purpose of resolving the her claims under Colorado law, her Colorado unjust enrichment claim and her claim for recover of minimum wages and overtime wages under Colorado law. Specifically, the plaintiff seeks certification of a plaintiff class consisting of

> All assistant store managers employed by defendant Dollar Tree Stores, Inc. who were not paid at least minimum wages, not paid their regular hourly rate, and/or not paid proper overtime wages, as required by the Colorado Wage Act and Colorado common law, at any period of their employment within the statute of limitations.

*Motion for class certification* [#43], p. 1.

Of course, Colorado law is not applicable to Dollar Tree employees employed in other states and, therefore, those employees are not properly included in a class concerning Young's claims under Colorado law.  In a separate motion, Young seeks certification of a nationwide collective action under the FLSA.

Concurrent with this order, I have issued an order granting the defendant's motion to dismiss Young's claims for recovery of minimum wages and overtime wages under Colorado law.  Those claims must be dismissed because the Colorado statutes under which Young brings her claims for recovery of minimum wages and overtime wages do not provide for such relief.  As a result, I analyze Young's motion for class certification as to her unjust enrichment claim, which is based on Colorado common law.  I note, however, that the same analysis would be applicable to minimum wage and overtime wage claims under Colorado law.

### III.  STANDARD OF REVIEW

Under FED. R. CIV. P. 23, a class may be certified if several requirements are met.  Rule 23(a) includes the following requirements: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of those of the class, and; (4) the representative parties adequately will protect the interests of the class.  If the requirements of Rule 23(a) are satisfied, then one of the alternative requirements outlined in Rule 23(b) also must be met.

Class certification is a matter committed to the discretion of the trial court. ***Anderson v. City of Albuquerque***, 690 F.2d 796, 799 (10th Cir. 1982).  A certified class may be altered, expanded, subdivided, or abandoned as the case develops.  ***See, e.g., Daigle v. Shell Oil Co.***, 133 F.R.D. 600 (D. Colo. 1990); ***Dubin v. Miller***, 132

F.R.D. 269, 270-75 (D. Colo. 1990).

> (A) district court may not evaluate the strength of a cause of action at the class certification stage, but it must determine, without passing judgment on whether plaintiffs will prevail on the merits, whether a plaintiff has satisfied the provisions of Rule 23.

*Vallario v. Vandehey*, 554 F.3d 1259, 1267 (10th Cir.2009) (internal quotation and citation omitted).

The defendant's primary argument against class certification is that the plaintiff has failed to establish commonality, Rule 23(a)(2)'s requirement that a plaintiff seeking certification of a class show that "there are questions of law or fact common to the class." Complete identity of legal claims among class members is not required. Rather, the rule requires that there be two or more issues whose resolution will affect all or a significant number of the members of the proposed class. *See Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir. 1982). Rule 23(a)(3) requires that the claims of a proposed class representative be typical of the claims of the class. "The commonality and typicality requirements tend to merge," but both "serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are [sufficiently] interrelated . . . ." *General Telephone Company of Southwest v. Falcon*, 457 U.S. 147, 157 n. 13 (1982).

Recently, the United States Supreme Court held that the commonality requirement requires the plaintiff to show that the class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, ___ U.S. ___, 131 U.S. 2541, 2551 (2011). To satisfy the commonality requirement, the claims of the members of the proposed class must depend on "a common contention – for example, the assertion of discriminatory bias on the part of the same supervisor." *Id*. Further, the common

4

contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*.

> What matters to class certification . . . is not the raising of common 'questions' - even in droves - but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Id*. (internal quotation and citation omitted).

In ***Dukes***, the Court examined a class of plaintiffs that claimed Wal-Mart discriminated against female employees in terms of pay equality and promotions. The class encompassed Wal-Mart's stores throughout the Untied States. Of course, Wal-Mart did not have an explicit policy prohibiting equal pay for women or the advancement of women. Rather, the plaintiffs alleged that local managers were permitted to exercise their discretion over pay and promotions in a way that favored men over women, leading to a disparate impact on female employees. According to the ***Dukes*** plaintiffs, a strong and uniform corporate culture caused bias against women to permeate the pay and promotion decisions of local managers.

In ***Dukes***, the Supreme Court held that the plaintiffs had not established commonality sufficient to support class certification under Rule 23. *Id*. at 2556 - 2557. "Because respondents provide no convincing proof of a companywide discriminatory pay and promotion policy, we have concluded that they have not established the existence of any common question." *Id*. The Court found the plaintiffs had not shown that Wal-Mart operates under a general policy of discrimination "which is what [the plaintiffs] must show to certify a companywide class." *Id*. at 2556.

### IV. ANALYSIS

With regard to the proposed class of Colorado ASMs in this case, Young's own declaration is the only evidence submitted by Young concerning Colorado ASMs, their meal breaks, missed or interrupted breaks, and pay for work done during missed or interrupted breaks. *Motion for class certification* [#43], Exhibit G (Young Declaration). Young estimates that, as a result of Dollar Tree's policies which effectively required her to work during her meal breaks and when she made bank deposits, she regularly worked between three and five hours off the clock each week, and she did not receive pay for this work. *Id.*, ¶ 27. In her declaration, Young describes her work in two Dollar Tree stores in Kansas and one Dollar Tree store in Colorado. Young says she and other ASMs "were rarely, if ever, allowed to take an uninterrupted lunch break at any time," but all hourly employees, including ASMs, were required to clock-out for unpaid meal breaks. *Id.*, ¶ 17. During these meal breaks, Young says, she and other employees "were required to keep performing work duties, although we were technically off-the-clock during the unpaid 'breaks.'" *Id.*, ¶ 18. Young contends this situation was created by Dollar Tree's "uniform personnel policy requiring at least one (1) ASM or Store Manager to be on duty at all times during working hours, as well as Defendant's requirement that a minimum of two (2) in-store employees be on duty at all times." *Id.*, ¶ 19. Young asserts that Dollar Tree "failed to properly record/credit all of my hours worked, pursuant to personnel and timekeeping policies that were uniformly applied to all ASMs." *Id.*, ¶ 15. Young also has submitted declarations from other Dollar Tree ASMs describing similar circumstances. *Motion for class certification* [#43], Exhibits H through S. However, none of these declarations concern work by ASMs at Dollar Tree stores in Colorado. Rather, they all concern Dollar Tree stores in other states.

With its response [#95] to the motion for class certification, Dollar Tree includes a

variety of evidence concerning Dollar Tree's meal break practices in it's Colorado stores. The evidence provided by Dollar Tree includes a statement of Dollar Tree's formal written policies applicable in all stores. One of those policies provides that employees may not work off the clock. Young does not dispute that Dollar Tree's formal written policies are as stated by Dollar Tree.

Dollar tree cites evidence that the meal break practices in its Colorado stores vary. For example, Dollar Tree cites the declarations of ASMs who worked for Dollar Tree in its Colorado stores. *Response* [#95], Exhibit 17 (summary of declarations contained in Exhibit 12). These declarations reflect that the meal breaks of many Colorado ASMs never are interrupted. *Id.* Other ASMs report that their meal breaks normally are not interrupted or that their meal breaks rarely are interrupted. *Id.* Those who report in their declaration that their meal breaks are interrupted on some occasions also report that they are able to take additional break time while they are clocked-in, or to seek an adjustment for time worked during their meal break. *Id.*

Survey data submitted by Dollar Tree shows that 18 percent of Colorado ASMs report having missed or interrupted meal breaks for which they were not paid. *Response* [#95], Exhibit 7 (Jay Declaration), Exhibit B, pp. 26 - 28 ([#95-7] CM/ECF pp. 516 - 518). In the same survey, two percent of Colorado ASMs reported that they were paid for missed or interrupted meal breaks, and 79 percent reported that they did not have any missed or interrupted meal breaks. *Id.*, p. 27 ([#95-7] CM/ECF p. 517).

For those Colorado ASMs who reported having missed or interrupted meal breaks, the frequency and duration of such interruptions was variable. *Id.*, pp. 25 - 25 ([#95-7] CM/ECF pp. 515 - 516). Of those ASMs, some said they know how to report time they spent working while on a meal break, and some said they did not know how to

7

report such time.  *Id.* p. 29 ([#95-7] CM/ECF p. 519).

Addressing bank deposits, Young says in her declaration that she was required to clock-out before leaving the store each night.  *Young Declaration*, ¶ 24.  However, she says Dollar Tree regularly required her to make the daily bank drop for her store after she left the store for the night.  She says she was not compensated for all of the time she "spent doing the daily bank drop in the evenings while off the clock."  *Id.*, ¶ 25.  Young says this was caused by Dollar Tree's "nationwide policy requiring that each store deposit its daily receipts for in-store sales, by nine (9:00) o'clock the following morning."  *Id.*, ¶ 23.  Young's declaration is the only evidence provided by Young concerning Colorado ASMs and payment of wages for time spent making bank deposits for Dollar Tree.

Declarations of Colorado ASMs submitted by Dollar Tree indicate that many Colorado ASMs say they always are on the clock and are compensated for bank runs.  *Response* [#95], Exhibit 11 [#95-11] (summary of declarations contained in Exhibit 12).  One declarant, Tamela Parker, says she has made bank deposits on her way home from work, and after clocking out, on no more than five occasions over the course of four years.  *Response* [#95], Exhibit 12 - Part 6 [#95-17], CM/ECF pp. 90 - 95 (Parker Declaration), ¶ 16.  When this happened, Parker says she usually made up for it the next day "by taking a few minute long break when I am clocked in."  *Id.*  Survey data submitted by Dollar Tree indicates that nine percent of Colorado ASMs reported that they had not been paid for the entire time they spent making bank deposits.  *Response* [#95], Exhibit 7 (Jay Declaration), Exhibit B, p. 33 ([#95-7] CM/ECF pp. 523).  Two-thirds of this group reported that they knew how to report the unpaid time they spent making bank deposits but, apparently, did not report the time.  *Id.*, p. 34, Table 15 ([#95-

8

7] CM/ECF pp. 524).  One-third reported they did not know how to report this time.  *Id.*

Given this record, I conclude that Young has not shown that there are common questions of law or fact within the Colorado class she proposes.  With regard to interrupted meal breaks, Young is the only Colorado ASM who asserts that Dollar Tree's uniform policies caused her breaks to be interrupted routinely and caused her to be denied pay or compensatory time for work she did when her meal break was interrupted.  The other Colorado ASMs whose declarations are in the record say their breaks were not interrupted, or, when they were interrupted, they were compensated for the work they did during their break, or the interruptions were so brief that they were inconsequential.  The survey data submitted by Dollar Tree shows that other Colorado ASMs say their meal breaks sometimes were interrupted and they were not paid for time spent working when their meal breaks were interrupted.  However, the survey data does not show that the circumstances of these ASMs are otherwise similar to Young's circumstances.  For example, nothing in the survey data indicates that other Colorado ASMs experienced the essentially constant interruption or denial of meal breaks and denial of pay for that time, as described by Young.  More important, nothing in the survey data indicates that unpaid interruptions of meal breaks reflected in the survey were caused by Dollar Tree's uniform personnel policies.

In this context, Young has not shown that a determination of the truth or falsity of her factual contentions about the effect of Dollar Tree's uniform nationwide policies on her unpaid work during meal breaks will serve to generate common answers that are apt to drive the resolution of possible claims by other Colorado ASMs.  This is so because the circumstances of other Colorado ASMs, as demonstrated in the record, do not indicate that Dollar Tree's uniform nationwide policies caused them to be denied pay

9

for interrupted meal breaks.

Similarly, with regard to payment of wages for time spent making bank deposits, Young has not demonstrated a factual or legal question common to the members of the proposed class. Young claims she routinely was required to make bank deposits while off the clock, but she was not compensated for the time spent making bank deposits. Young asserts this non-payment was caused by Dollar Tree's nationwide policy requiring each store to deposit daily receipts by 9:00 a.m. the following morning. The other Colorado ASMs whose declarations are in the record are usually on the clock when making bank deposits and are paid for time spent making bank deposits, or they otherwise are compensated for time spent making bank deposits. Factually, the experience of these Colorado ASMs differs significantly from Young's. Equally important, nothing in the survey data, reflecting the experiences of other Colorado ASMs, indicates that unpaid time for making bank deposits was caused by Dollar Tree's uniform personnel policies.

In this context, Young has not shown that a determination of the truth or falsity of her factual contentions about the effect of Dollar Tree's uniform nationwide policies on her unpaid work making bank deposits will serve to generate common answers that are apt to drive the resolution of possible claims by other Colorado ASMs. This is so because the circumstances of other Colorado ASMs, as demonstrated in the record, do not indicate that Dollar Tree's uniform nationwide policies caused them to be denied pay for time spent making bank deposits.

## IV. CONCLUSION & ORDER

Considering all of the relevant evidence in the record, I find and conclude that Young has not shown that there are questions of law or fact common to the class of

Colorado ASMs she proposes. Therefore, I conclude that Young has not satisfied the requirement of FED. R. CIV. P. 23(a)(2), which permits certification of a class only when there are questions of law or fact common to the proposed class. Thus, it is not proper to certify a class of Colorado ASMs as proposed by the plaintiff.

**THEREFORE, IT IS ORDERED** that the **Plaintiff's Motion for Class Certification and Incorporated Memorandum of Law** [#43] filed October 19, 2011, is **DENIED**.

Dated August 24, 2012, at Denver, Colorado.

BY THE COURT:

Robert E. Blackburn
United States District Judge